**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| DANIEL CANCHOLA, individually and on behalf of all others similarly situated, 1813 Brazos Drive Corpus Cristi, TX 78412           Plaintiff,           v. DUPONT FABROS TECHNOLOGY, INC., 401 9th Street NW, Suite 600 Washington, DC, 20004, LAMMOT J. DU PONT, 401 9th Street NW, Suite 600 Washington, DC, 20004, MICHAEL A. COKE, 401 9th Street NW, Suite 600 Washington, DC, 20004, THOMAS D. ECKERT, 401 9th Street NW, Suite 600 Washington, DC, 20004, FREDERIC V. MALEK, 401 9th Street NW, Suite 600 Washington, DC, 20004, JOHN T. ROBERTS, JR., 401 9th Street NW, Suite 600 Washington, DC, 20004, JOHN H. TOOLE, 401 9th Street NW, Suite 600 Washington, DC, 20004, CHRISTOPHER P. ELDREDGE, 401 9th Street NW, Suite 600 Washington, DC, 20004, and | Civ. No. _____ **JURY TRIAL DEMANDED** |

MARY M. STYER,                                          )
401 9th Street NW, Suite 600                            )
Washington, DC, 20004,                                  )
                                                        )
            Defendants.                                 )

## VIOLATION OF SECTIONS 14(a) AND 20(A)
## OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Daniel Canchola ("Plaintiff"), by his attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

### INTRODUCTION

1.      Plaintiff brings this action on behalf of himself and the public stockholders of DuPont Fabros Technology, Inc. ("DuPont" or the "Company") against DuPont's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.      On June 9, 2017, Digital Realty Trust, Inc. ("Digital Realty") and the Company announced that they had entered into a definitive agreement on June 8, 2017 ("Merger Agreement") under which Digital Realty will acquire all of the outstanding shares of DuPont in an all-stock transaction (the "Proposed Transaction").  If consummated, DuPont stockholders will receive 0.545 shares of Digital Realty common stock for each share of DuPont stock that they own ("Merger Consideration").  The Proposed Transaction was valued at approximately $7.6 billion in enterprise value at the time of the announcement.

3.      On July 10, 2017, Defendants issued materially incomplete and misleading disclosures in the Form S-4 Registration Statement (the "Registration Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed

Transaction.  The Registration Statement is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4.      Accordingly, Plaintiff alleges herein that Defendants have breached their fiduciary duties and violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331–32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

6.      The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of DuPont common stock.

9.      DuPont is a corporation organized and existing under the laws of the State of Maryland.  The Company maintains its principal executive offices at 401 9th Street NW, Suite

600, Washington, DC, 20004.  DuPont common stock trades on the New York Stock Exchange under the ticker symbol "DFT."

10.     Defendant Lammot J. Du Pont ("Du Pont") has served as Chairman of the Board of Directors and a director of the Company since 2007. Du Pont co-founded the Company.

11.     Defendant Michael A. Coke ("Coke") has served as a director of the Company since October 2007.

12.     Defendant Thomas D. Eckert ("Eckert") has served as a director of the Company since October 2007.

13.     Defendant Chrisopher P. Eldredge ("Eldredge") has served as the President, Chief Executive Officer, and a director of the Company since February 17, 2015.

14.     Defendant Frederick V. Malek ("Malek") has served as a director of the Company since October 2007. Defendant Malek is the lead independent director of the Company.

15.     Defendant John T. Roberts ("Roberts") has served as a director of the Company since February 2011.

16.     Defendant Mary M. Styer ("Styer") has served as a director of the Company since 2015.

17.     Defendant John H. Toole ("Toole") has served as a director of the Company since October 2007.

18.     Defendants Du Pont, Coke, Eckert, Eldredge, Malek, Roberts, Styer, and Toole are collectively referred to as Individual Defendants and/or the Board.

19.     Non-party Digital Realty is a North American data center real estate company headquartered at Four Embarcadero Center, Suite 3200, San Francisco, California, 94111.  Digital Realty common stock trades on the New York Stock Exchange under the ticker symbol "DLR."

## CLASS ACTION ALLEGATIONS

20.     For purposes of the breach of fiduciary duties claims, Plaintiff brings this action individually and as a class action on behalf of all holders of DuPont stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

21.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

22.     The Class is so numerous that joinder of all members is impracticable.  According to the Merger Agreement, as of June 6, 2017, DuPont had 77,836,110 shares of common stock outstanding.  These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

23.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, inter alia, the following:

   a.     whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

   b.     whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

24.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

25.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

27.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

29.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

### Company Background and Potential for Growth

30.     DuPont operates twelve data centers in the United States and Canada, totaling 3.5 million gross square feet and 302 megawatts.  Its customers include enterprises in industries such as technology, internet content providers, media and communications, cloud-based services, healthcare, and financial services.

31.     On June 9, 2017, the Company and Digital Realty announced that they had entered into the Merger Agreement. The two companies issued a joint press release with the following relevant information:

**SAN FRANCISCO and WASHINGTON, D.C. – June 9, 2017** – Digital Realty (NYSE: DLR), a leading global provider of data center, colocation and interconnection solutions, and DuPont Fabros (NYSE: DFT) a leading owner, developer, operator and manager of enterprise-class, carrier-neutral, large scale multi-tenant data centers, announced today they have entered into a definitive agreement under which DuPont Fabros will merge with Digital Realty in an all-stock transaction. The consummation of the transaction is subject to customary closing conditions, including approval by the shareholders of Digital Realty and DuPont Fabros. Under the terms of the agreement, DuPont Fabros shareholders will receive a fixed exchange ratio of 0.545 Digital Realty share per DuPont Fabros share, for a transaction valued at approximately $7.6 billion in enterprise value.

**Transaction Delivers Key Strategic and Financial Benefits**

• **Enhances Ability to Serve Top U.S. Metro Areas**: DuPont Fabros' portfolio is concentrated in top U.S. data center metro areas across Northern Virginia, Chicago and Silicon Valley. The transaction will help grow Digital Realty's presence in strategic, high-demand metro areas with strong growth prospects, while achieving significant diversification benefits for DuPont Fabros' shareholders from the combination with Digital Realty's existing footprint of 145 properties across 33 global metropolitan areas.

• **Expands Hyper-Scale Product Offering**: DuPont Fabros' 12 purpose-built, in-service data centers will significantly expand Digital Realty's hyper-scale product offering and improve its ability to meet the rapidly growing needs of cloud and cloud-like customers, in addition to enterprise customers undertaking the shift to a hybrid cloud architecture. Conversely, the transaction enables DuPont Fabros to address a broader set of customers' data center requirements, with the addition of Digital Realty's colocation and interconnection product offerings.

• **Solidifies Blue-Chip Customer Base**: DuPont Fabros' impressive roster of blue-chip customers will further enhance the credit quality of Digital Realty's existing customer base. On a combined basis, investment grade or equivalent customers will represent more than 50% of total revenue. The transaction also significantly reduces DuPont Fabros' customer concentration. The combined company's top three customers will account for approximately 18% of revenue compared to 57% for the top three customers of DuPont Fabros on a standalone basis.

• **Development Pipeline Provides External Growth Potential**: DuPont Fabros' six data center development projects currently under construction are 48% pre-leased and represent a total expected investment of approximately $750 million, and amount to roughly a 26% expansion of its standalone critical load capacity. These projects are located in Ashburn, Chicago, Santa Clara and

Toronto, all metro areas where Digital Realty has an existing presence. These six projects are expected to be delivered over the next 12 months, representing a solid pipeline of future growth potential. In addition, DuPont Fabros owns strategic land holdings in Ashburn and Oregon, which will support the future delivery of up to 163 megawatts of incremental capacity, along with 56 acres of land recently acquired in Phoenix.

• **Size and Scale Generate Incremental Benefits**: The two companies' operating models are highly complementary, and the combined organization is expected to provide the most comprehensive product offering in the data center sector. Given the enhanced size and scale, the combined company is also expected to have the most efficient cost structure and the highest EBITDA margin of any U.S.-based publicly-traded data center REIT.

• **Creates Substantial Anticipated Cost Efficiencies and Financial Benefits**: The combination of the two companies is expected to create an opportunity to realize up to $18 million of annualized overhead savings, resulting from both companies' complementary business operations. Upon closing, the transaction is expected to be immediately accretive to financial metrics, and is expected to further improve balance sheet strength.

"This strategic and complementary transaction significantly enhances Digital Realty's ability to support the growth of hyper-scale users in the top U.S. data center metro areas, while providing meaningful customer and geographic diversification for DuPont Fabros," said A. William Stein, Digital Realty's Chief Executive Officer. "The combination is expected to generate both operating and financial benefits, and I'd like to congratulate Scott Peterson, Mark Walker and their team on successfully negotiating the largest transaction in our company's history, a combination that we believe will enhance our ability to create significant long-term value for both sets of shareholders."

"We are excited to deliver this compelling transaction to our shareholders and execute upon two of the strategic objectives embodied in our corporate vision — diversifying our customer base and expanding our geographic presence," said Christopher P. Eldredge, DuPont Fabros' President & Chief Executive Officer. "As part of Digital Realty, our shareholders will continue to realize the benefits of our high-quality portfolio, with the added benefits of belonging to an even greater data center network with a truly global footprint and a well-diversified customer base. We also believe our shareholders will greatly benefit from Digital Realty's investment grade balance sheet and more attractive cost of capital. We look forward to working closely with the Digital Realty team over the coming months to close the transaction and bring our two companies together."

**The Registration Statement Misleads by Omitting Material Information**

32.     On July 10, 2017, DuPont and Digital Realty filed a materially misleading and incomplete Registration Statement with the SEC.  Designed to convince shareholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the financial valuations prepared by Goldman in connection with the rendering of its fairness opinion, and the Company's expected future value as a standalone entity as evidenced by the Company's financial projections.

### *Omissions of Financial Analysis Conducted by Goldman*

33.     The Registration Statement fails to disclose the methodologies, key inputs, and multiples relied upon and observed by Goldman in preparing its fairness opinion, including, (i) with respect to Goldman's *Selected Transactions Analysis*, the individual Implied Forward EBITDA Multiples for the selected transactions; and (ii) with respect to the *Selected Transactions Premia Analysis*, the 26 selected acquisition transactions and the individual 1-day and 52-week premia paid in each of the selected transactions.

34.     With respect to Goldman's DCF analysis for each of DuPont, the pro forma combined company, and for Parent, the Registration Statement fails to disclose: (i) the terminal values calculated for each company; (ii) the inputs and assumptions underlying Goldman Sachs' calculations of the cost of equity for each of the companies to derive the ranges of discount rates used by Goldman in each of its DCF analyses; and (iii) the perpetuity growth rates implied from each of Goldman's analyses.

35.     Further, the Registration Statement indicates that, in performing its DCF analysis for each of DuPont, the pro forma combined company, and Parent, Goldman used estimates of dividends for the period from March 31, 2017 through the end of 2021, and derived terminal values by subtracting estimates of net debt and preferred stock as of December 31, 2021.  The Registration

Statement, however, fails to disclose the projected dividends and net debt and preferred stock of each of DuPont, the pro forma combined company, and for Parent for years 2017 through 2021. In addition, although the Registration Statement provides the projections of unlevered free cash flows for each of DuPont and Parent, it fails to disclose the line items used to calculate those unlevered free cash flows

36.     Here, where the Company approached no other potential strategic partners, these analyses are material and provide a good benchmark by which to judge the fairness of the consideration offered in a proposed transaction.   Further information on the methodology is material where, as here, the description of the analysis fails to provide key inputs and the resulting fairness range calculated by the financial advisor.   Thus, the details of Goldman's analyses are material to stockholders, and disclosing some, but not all, details misleads shareholders as to the financial adviser's basis for its fairness opinion.

### *Failure to Reconcile Non-GAAP Financial Measures*

37.     The Registration Statement fails to provide material information concerning the Company's financial projections and the financial forecasts for Ensco provided to the Board and Goldman.

38.     The Registration Statement discloses "Unaudited Prospective Financial Information" that the Company provided to the Board and Goldman during the process leading up to the execution of the Merger Agreement.

39.     The Registration Statement only provides projections of the Company's financial future for four non-GAAP metrics: EBITDA, Funds From Operations ("FFO") per Share, Adjusted FFO per Share, and Unlevered Free Cash Flow.   However, the Registration Statement fails to provide line item metrics used to calculate these non-GAAP measures. The omission of such

projections renders the non-GAAP projections included in the Registration Statement materially incomplete and therefore misleading.

40.    The Registration Statement also provides the Company's projections of Digital Realty's financial future for four metrics: Adjusted EBITDA, Core FFO per Share, AFFO per Share, and Unlevered Free Cash Flows. These projections were based on those projections provided to DuPont by Digital Realty, and used in Goldman's financial analysis underlying its fairness opinion.

41.    However, the projections for Digital Realty fail to include the line items necessary to reconcile these non-GAAP figures to GAAP metrics.

42.    When a company discloses information in a proxy that includes non-GAAP financial metrics, the Company must also disclose comparable GAAP metrics and a quantitative reconciliation of forward-looking information.  17 C.F.R. § 244.100.

43.    Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial metrics in communications with stockholders.  Recently, former SEC Chairwoman Mary Jo White stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Atwood has included in the Registration Statement), implicates the centerpiece of the SEC's disclosure regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-

GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

Further, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] In fact, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics that demonstrate the SEC is indeed tightening policy.[3] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

44.     Thus, the above-referenced line-item projections that have been omitted from the Registration Statement are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders. Defendants must disclose the following line items, among others, used to calculate the non-GAAP financial measures for both DuPont and Digital Realty: (i) earnings; (ii) interest; (iii) income taxes; (iv) depreciation and amortization; (v) capital expenditures; (vi) stock-based compensation; (vii) changes in net working capital; (viii) proceeds from the disposal of assets; (ix) termination fees and other non-core revenues; (x) transaction and integration expenses; (xi) loss

---

[1]     Mary Jo White, Chairwoman, SEC, Keynote Address at the International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[2]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3]     *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

from early extinguishment of debt, (xii) issuance costs associated with redeemed preferred stock; (xiii) severance, equity acceleration, and legal expenses; (xiv) loss on currency forwards; (xv) other non-core expense adjustments; (xvi) preferred stock dividends; (xvii) cash interest expense; (xviii) development capital expenditures; (xix) net proceeds from real estate transactions; (xx) severance, equity acceleration, and legal expenses, (xxi) transaction and integration expenses; (xxii) changes in working capital; and any other line items used to calculate GAAP metrics from the disclosed non-GAAP measures.

45.     Without disclosure of these reconciling metrics, the Proxy violates SEC regulations and materially misleads DuPont stockholders.

### *Omission of Potential Conflict of Interest Faced By Goldman*

46.     Additionally, the Registration Statement omits critical information regarding potential conflicts of interest on the part of Goldman. Specifically, the Registration Statement states that an affiliate of Goldman entered into a commitment to provide Defendant DuPont Fabros Technology, L.P. (of which DuPont is the sole general partner) with a 364-day Bridge loan facility for which affiliate(s) of Goldman will receive compensation. However, the Registration Statement fails to disclose the amount of compensation the Goldman affiliate(s) stand to receive in connection with the bridge loan facility.

47.     The statements in the Proxy are misleading because they provide shareholders a materially incomplete and distorted picture of the sales process underlying the Proposed Transaction, the various alternatives available to (and considered by) defendants other than the Proposed Transaction, and the efforts taken (or not taken) to ensure that no conflicts of interest tainted the negotiation process, rendering it unfair to Plaintiff and other members of the class. Without this omitted information, DuPont shareholders cannot make a fully-informed decision whether to vote to approve the Proposed Transaction.

48.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and DuPont**

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  DuPont is liable as the issuer of these statements.

65.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

66.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

67.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

68.     The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

70.     Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

71.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72.     The Individual Defendants acted as controlling persons of DuPont within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of DuPont and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

75.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

76.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

D.      Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

F.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  July 24, 2017              LEVI & KORSINSKY LLP

                                   /s/ Elizabeth K. Tripodi
                                   Elizabeth K. Tripodi (#979154)
                                   Donald J. Enright (#MD013551)
                                   1101 30th Street NW
                                   Suite 115
                                   Washington, D.C. 20007
                                   Telephone:     (202) 524-4290
                                   Facsimile:     (202) 333-2121

                                   *Counsel for Plaintiff*